## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**SHARON SIMONEAUX**

**CIVIL ACTION**

**VERSUS**

**NO. 09-326-CN**

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF THE SOCIAL**
**SECURITY ADMINISTRATION**

## RULING

This matter is before the Court on Plaintiff Sharon Simoneaux's, appeal of a final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Defendant Commissioner has filed his opposition and plaintiff has filed her reply. In making that final decision, the Administrative Law Judge reached the fifth step of the five-step sequential disability analysis set forth in 20 C.F.R. § 416.920(b)-(f),[1] and found that plaintiff had the residual functional capacity (RFC) to perform other work in the national economy. (Tr. 61.)

## FACTS AND PROCEDURAL HISTORY

On June 6, 2007, the plaintiff filed an application for a period of disability and Disability Insurance Benefits alleging disability since July 9, 2006[2], due to bone spurs, nerve damage in the arm, high blood pressure, diabetes, poor vision, stiffness, and osteoarthritis.

---

[1]   Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988).

[2]   While plaintiff's application states that she has been disabled since February 20, 2001 (Tr. 96), at the hearing, the plaintiff, through her attorney, moved to amend the alleged onset date of disability from February 20, 2001, to July 9, 2006, the claimant's 50th birthday. The motion was granted and the alleged onset date of the claimant's disability was amended to July 9, 2006.

(Tr. 96.)  The application was denied at the initial level on August 10, 2007. (Tr. 53.)  After a timely request for hearing, the Administrative Law Judge (ALJ) conducted an administrative hearing on October 22, 2008, at which plaintiff, represented by counsel, appeared and testified, along with a vocational expert (VE). (Tr. 5-32, 53.)   On November 5, 2008, the ALJ issued an adverse decision denying disability insurance benefits finding that plaintiff was not disabled within the meaning of the Act at anytime during the relevant time period. (Tr. 53-62.)   The ALJ found that plaintiff had severe impairments of diabetes mellitus, obesity, hypertension, gastroesphageal reflux disease (GERD) by history, atypical chest pain, degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine and osteoarthritis, but did not have an impairment or combination of impairments, which met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 55-56, Findings 3 and 4.)  The ALJ further found that these were severe impairments with the meaning of <u>Stone v. Heckler</u>, 752 F.2d 1099 (5th Cir. 1985).  The ALJ also found that plaintiff retained the RFC to perform a limited range of light work. (Tr. 59, Finding 5.)  Because plaintiff's past relevant work was outside of the ALJ's RFC finding, the ALJ found that given plaintiff's age, education, previous work experience, Rule 202.14 (Table 2) of the Medical-Vocational Guidelines directed a finding of "not disabled." (Tr.61, Findings 6-10.)  On April 7, 2009, the Appeals Council concluded that no basis existed for review of the ALJ's decision, and therefore, the ALJ's decision became the final decision of the Commissioner, which decision is now before this Court.

## <u>ANALYSIS</u>

2

Judicial review of a final decision of the ALJ denying disability insurance benefits is limited to two inquiries: (1) whether there is substantial evidence in the record as a whole to support the ALJ's findings, and (2) whether the ALJ applied the proper legal standards.[3]  In applying the "substantial evidence" standard, the Court must carefully scrutinize the record to determine if, in fact, substantial evidence supporting the decision exists, but the Court may not reweigh the evidence in the record, nor try the issues de novo, nor substitute its judgment for the ALJ's even if the evidence preponderates against the ALJ's decision. Id.  Substantial evidence means more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept to support a conclusion.  Id.  A finding of "no substantial evidence" will be made only where there is a conspicuous absence of credible choices or an absence of medical evidence contrary to the claimant's position.  Id.

The burden of proof in disability administrative hearings rests predominately on the plaintiff, and toward that end, the plaintiff and the ALJ conduct a five-step analysis.[4]  At step three of the evaluation process, the plaintiff bears the burden of proving that an impairment or combination of impairments meet or equal the criteria of an Appendix 1 Listing.[5]  Further, the plaintiff must provide medical findings that support each of the criteria for the equivalent impairment determination.[6]

---

[3] Boyd v. Apfel, 239 F.3d 698 (5th Cir. 2001).

[4] Brown v. Apfel, 192 F.3d 492, 497-498 (5th Cir. 1999).

[5] Selders v. Sullivan, 914 F.2d 614, 619 (5th Cir. 1990).

[6] Id.

In the present case, plaintiff argues that the ALJ erred in finding that she retained the RFC to perform a restricted amount of "light" work.  Plaintiff claims that since her amended onset date would make her disabled at the age of **50** (advanced age), that had the ALJ found that she was restricted to "sedentary" work, Rule 201.14 (Table 1) of the Medical-Vocational Guidelines (GRIDS) would have compelled a finding of disability.[7]  Plaintiff argues that the record supports the ALJ's 2nd hypothetical question to the VA which resulted in a limitation to sedentary work due to "occasional" use of her hands regarding fingering and handling. The plaintiff also argues that the ALJ erred in assessing her limitation from prolonged standing or walking.

Plaintiff was 52 years old as of the date of her hearing.  She has a high school education and previous work experience as an overnight stock clerk, which is heavy in exertional demand and semi-skilled with a specific vocational preparation ("SVP") of 4 (Tr. 24).  She had sufficient earnings to be fully insured for disability insurance, but only through December 31, 2006, her date last insured (DLI). (Tr. 55, 88-89.)  In order to be entitled to a period of disability or disability insurance benefits, a plaintiff must establish disability prior to her date last insured. *See,* 20 C.F.R. § 404.131.  Therefore, plaintiff's alleged span of disability is a six month period from July 9, 2006, through December 31, 2006. Plaintiff has submitted medical records outside the relevant time period and the Fifth Circuit has held that

---

[7] GRIDS: Under 201.14 (Table 1) a person with the RFC for maximum sustained work capability limited to sedentary work as a result of severe medically determinable impairments, that is of advanced age with a high school diploma or more, who does not provide for direct entry into skilled work; who has previous work experience that is skilled or simi-skilled and those skills are not transferable, would be considered disabled.

evidence showing the degeneration of a claimant's condition after the period of insured status had expired is not relevant to the Commissioner's analysis.[8]   However, the ALJ, in his decision, did indeed, review these records on plaintiff's behalf.

Plaintiff underwent a CT scan of the cervical spine in September of 2006.  The scan showed no abnormalities at C2-3 and C7-T1.  It showed no significant disc abnormality at C-3-4 and C6-7.  At the C4-5 level the disc interspace was significantly narrowed and there were significant posterior marginal endplate bone spurs causing significant encroachment on the ventral thecal sac, but without spinal stenosis.  No associate disc abnormality was found and exuberant facet arthopathy and uncovertebral spurring caused a moderately severe degree of right-sided and a moderate degree of left-sided bony foraminal encroachment.  At the C-6-7 level there was a mild degree of left-sided bony foraminal encroachment, however no associated disc abnormality. (Tr. 193.)

Plaintiff was also seen on December 15, 2006, by Sharon Werner, M.D., with complaints of neck and shoulder pain.  Dr. Werner instructed plaintiff to continue with Ibuprofen and prescribed Neurotonim for pain. (Tr. 147.)

Plaintiff was then examined for Disability Determinations Services in August 2, 2007, by Harry F. Jasmin, M.D., an independent medical consultant.  Plaintiff complained of neck pain radiating to her left shoulder and almost constant non-radiating backache.  Dr. Jasmin found plaintiff's spinal curvature was slightly kyphotic[9].  While her thoracolumbar range of

---

[8] Torres v. Shalala, 48 F. 3d 887, 894, n. 12 (5th Cir. 1995).

[9] Abnormal rearward curvature of the spine, resulting in protuberance of the upper back; hunchback.

motion was diminished, with 60 degrees of flexion and 20 degrees of extension, with muscle spasms, her straight leg raising and crossed leg tests were negative.  Motor strength in her shoulders were 5/5; pulses were all 2+, as were her deep tendon reflexes.  Her gait was normal.  Dr. Jasmin found her back pain was localized to her lumbar region and hips, with no radiation, and opined that her obesity might be a strong factor.

With respect to her hands, Dr. Jasmin found limited range of motion in her wrists, nodules present bilaterally in her distal interphalanges, reduced motor strength in both hands and her grip was 4/5.  He opined that her problems in her wrists were suggestive of rheumatoid arthritis.

Dr. Jasmin went on to opine that plaintiff was able to sit, walk and stand limited distances and do limited exertional activities given her excessive weight.  She is able to lift-carry or push/pull 30 pounds.  She is not able to use her hands for repetitive action such as grasping and fine manipulation due to arthritic lesions.  She is not able to bend, squat, stoop, crouch, kneel, climb, twist, reach or turn intermittently.  Her hand-eye coordination, cognitive skills, and concentration were normal.  She is able to drive and travel moderate distances.  She is able to hear, see and talk well.  At this point, Dr. Jasmin continues, she is not able to perform any work that involves prolonged standing, weight bearing, or constant manipulation with fingers due to decreased grasping ability.  Dr. Jasmin's recommendation regarding her hand problems was to have a work up for rheumatoid arthritis. (Tr. 165-67.)

On August 7, 2007, plaintiff's medical records were reviewed by Dr. Joseph Michalik, a non-examining state agency medical consultant. (Tr. 168-176.)  Dr. Michalik noted that

plaintiff was able to lift or carry no more than 20 pounds occasionally and no more than 10 pounds frequently; could stand, walk or sit for about 6 hours in an 8-hour workday; and had limited ability to carry, climb, stoop, crouch, kneel and crawl.  He also limited plaintiff to occasional gross and fine manipulation of the hands. (Tr. 172.)

Plaintiff underwent an MRI on August 13, 2008, which is outside of the relevant period.  This MRI showed degenerative disc disease with disc space narrowing at C-4-5 and C-5-6 with broad-based oseophytes and disc bulges of both the C4-5 and C5-6 discs.  There was also bilateral degenerative changes to the facets and unconvertebral joints at C4-5. There were decreased CSF (cerebrospinal fluid) spaces anterior and posterior to the spinal cord with complete obliteration of the CSF spaces around the cord.  There was a broad based disc bulge at C5-6 impinging on the ventral thecal sac with mild degeneration of the facet joints.  An MRI of the lumbar spine was performed at the same time and revealed desiccation of the disc with disc space narrowing at L4-5 and L5-S1.  There was bilateral bony neural foraminal narrowing most significantly at the L5-S1 levels, with possible bilateral nerve root impingements.

On August 25, 2008, the plaintiff was seen at the Neurology Clinic at EKLMC to review the results of her MRIs, also outside of the relevant period.  On examination, the functions of the claimant's cranial nerves II-XII were intact, her strength was intact throughout, her deep tendon reflexes were 2+ throughout, and she had a negative Babinski's test.  There were no symptoms from the MRI changes.  There were no signs of radiculopathy or myelopathy.  The examiner diagnosed the claimant with neck and low back pain with no

neurological deficits.  He opined that both her neck and low back pain were likely secondary to her diagnosis of osteoarthritis, and recommended that she exercise 30 minutes per day and should receive pain management from her primary care physician for her osteoarthritis. (Tr. 233.)

The ALJ found that while plaintiff's degenerative disc disease, considered with or without the effects of her obesity and osteoarthritis is a severe impairment, it does not meet the criteria of Listing 1.04 (Disorders of the Spine) of the Listing of Impairments.[10]  Further, the ALJ found that there was no evidence during the relevant time period that plaintiff suffered from any motor loss or reflex loss attributable to the impairments of her spine.  The evidence indicated that her straight leg raising tests have been negative, she has had no arachnoiditis, nor any pseudoclaudication, as is required in the listing.[11]

---

[10]  Listing 1.04 states:

1.04  *Disorders of the spine* (e.g. herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equine) or the spinal cord.
With:
    A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
or
    B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
or
    C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging manifested by chronic nonradicular pain and weakness and resulting in inability to ambulate effectively as defined in 1.00B2b.

[11]  Plaintiff does not state that she meets a particular listing, only that the effects of her degenerative disc disease and the questionable use of her hands precludes her from prolonged sitting and standing and limit manipulation with her hands.

The ALJ also found that there was no evidence in the record that established or confirmed that during the relevant period that plaintiff has had any impairment or combination of impairment that meets or medically equals the criteria of Listing 1.02, *Major dysfunction of a joint*. The listing requires major dysfunction of a joint or joints due to any cause (which would include obesity, osteoarthritis, and rheumatoid arthritis) resulting in an inability to ambulate effectively or to perform fine and gross movements effectively.[12] The ALJ points out that plaintiff complained to Dr. Jasmin of difficulty opening her hands in the morning, has decreased grip strength, and drops things inadvertently. However, on examination, Dr. Jasmin found that she had limited range of motion in her wrists, but that she could lift/carry or push/pull 30 pounds, but she was not able to use her hands for repetitive action such as grasping and fine manipulation. The ALJ found that the inability to use her hand for *repetitive* grasping and fine manipulation implies that she can still use her hands, but is limited in the duration of her ability to do so. (Tr. 58.) This is supported by plaintiff's own testimony that she can fold clothes, fix some breakfast, dress herself, drive a van, and go to church on Sundays. (Tr. 15-23.) Further, plaintiff stated that while she does have morning stiffness in her hands, it improves with activities. (Tr. 163.) Plaintiff argues that the ALJ should have relied on Dr. Michalik's finding that plaintiff's gross and fine

---

[12] The regulations define loss of function for fine and gross movements as an extreme loss of function of both upper extremities; i.e., an impairment that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living. Therefore, examples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level. (20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.00B2bc)

manipulation should be limited to only "occasionally" and that the ALJ erred in finding that her gross and fine manipulation is limited to only "frequent."   The ALJ considered Dr. Michalik's findings, but favored Dr. Jasmin's findings since there was record evidence to support a "frequent" limitation.[13]   Further, the ALJ considered all of the medical evidence, including plaintiff's testimony.   Also, there is no evidence to support that plaintiff has extreme limitations in her fine and gross movement so as to interfere seriously with her ability to independently initiate, sustain, or complete activities. The Court's job is not to reweigh the evidence, but to determine if there is sufficient evidence in the record to support the ALJ's finding.   The Court agrees in this instance that there is sufficient evidence to support the ALJ's finding with regard to plaintiff's handling and fingering limitations.   The Court further finds that while plaintiff's gross and fine manipulation is limited, it is not limited to the extent of only occasional use and that she can perform frequent fingering and handling.

With regard to plaintiff's other impairments of hypertensive cardiovascular disease, GERD and diabetes, the ALJ found that there was no evidence in the record that established or confirmed that during the relevant period that these impairments met or equaled a listed impairment.   In order to satisfy any listed impairment, a plaintiff must manifest all the specified criteria of a particular listing and plaintiff bears the burden of proving that he

---

[13] See, Martinez v. Chater, 64 F.3d 172, 176 (5th Cir. 1995)(an ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.)

satisfies all of the criteria.[14]  Given the above medical evidence, the ALJ concluded and found that plaintiff suffered from severe impairments, but that the impairments did not meet or equal a listed impairment.  Plaintiff does not dispute that these impairments do not meet a listed impairment, nor does she discuss it in her appeal.

At step four of the sequential evaluation, the ALJ must determine the plaintiff's residual functional capacity (RFC).  In making this determination the ALJ considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence, based on the regulations and Social Security Rulings 96-4 and 96-7.  He also considered the opinion and medical evidence of record, along with the testimony and found that plaintiff retained the RFC to perform light work, except that she cannot climb ladders, ropes or scaffolds and can only occasionally climb stairs or ramps. Further she is limited bilaterally to frequent handling and fingering.

The ALJ also considered plaintiff's allegations that she is in constant pain.  However, during her examination by Dr. Jasmin, she did not list any prescribed pain medication and testified that she was taking over the counter medications for her pain.[15]  The ALJ notes that the absence of evidence that the plaintiff has sought or received pain management or that she has not been prescribed pain medication stronger than ibuprofen, indicates that her pain is not of the severity that she has alleged.  Therefore, the ALJ also found that plaintiff's

---

[14] Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991.)

[15] Griego v. Sullivan, 940 F.2d 942, 945 (5th Cir. 1991)(use of only over-the-counter pain relievers, such as aspirin, suggests that the severity of the pain is not so grate as to preclude light exertional type work.)

statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that are inconsistent with the above RFC assessment.

Plaintiff's main argument hinges on the limitation of her ability to use her hands and the hypothetical questions posed to the vocational expert (VE).  The ALJ posed two hypothets to the VE.  The first one limited plaintiff's fingering and handling abilities to "frequent" (2/3 of a day) and the other one limited plaintiff's fingering and handling abilities to "occasional" (1/3 of a day).  Under the frequent designation, the VE testified that plaintiff could perform light work and that there were a significant amount of jobs (reduced by 25 percent for the  frequent bilateral limitation) in the national economy available, including cashier, inspector, production worker, and security monitor.  Under the occasional designation, the VE testified that the cashier, inspector and production worker jobs would be eliminated and the designation would throw it into a sedentary capacity because of the limited use of the hands. Under the sedentary designation there were 208 jobs in Louisiana and 27,278 national (with a 50% reduction) in the order clerk position.  The VE stated that while the order clerk position would be sedentary, the security monitor position would come under light.  The ALJ allowed the VE to be questioned by plaintiff's counsel, but that garnered no testimony to contradict the VE's testimony.[16]

As stated above, the ALJ found, after reviewing the record as a whole, that plaintiff's use of her hands is limited to frequent use and not occasional use.  The limitation of

---

[16] Perez v. Barnhart, 415 F.3d 457, 464 (5th Cir. 2005)(if a claimant offers no contrary evidence to the vocational expert's testimony, the claimant fails to meet her burden of proof under the fifth step of the disability analysis.)

"frequent use" allows plaintiff to perform light work as testified to by the VE, and further, falls within the purview of the RFC determined by the ALJ.  Plaintiff urges that the Court find that she can only perform sedentary work because under the GRIDS if a person of advanced age (50 or older) can only perform sedentary work, they would be deemed disabled.  Note that plaintiff amended her date of onset to her 50th birthday (July 9, 2006), which is almost five (5) years later than originally set forth on her application.  This amendment coupled with her date last insured (December 31, 2006), limited her relevant time period to only about 6 months, which also limited the relevant medical evidence.  While the Court agrees that plaintiff suffers from a degree of rheumatoid arthritis in her hands, the record contains sufficient evidence to support the ALJ's limitation of "frequent use." Therefore, the ALJ did not err in his determination with respect to plaintiff's hand limitations.

Plaintiff also argues that the ALJ erred in assessing her limitation from prolonged standing or walking, and states that the ALJ relied on the findings of the Dr. Michalik to make his determination.  Plaintiff asserts that because Dr. Michalik did not appear to review the September 2006 CT report that his findings are flawed.  Plaintiff, in her reply brief, states that defendant commissioner misrepresents the findings of the September 2006 CT scan. The report does indicate that plaintiff suffers from various abnormalities to her cervical spine, however these abnormalities do not rise to the level of severity so as to meet a listing for disability.  The medical evidence simply does not support a finding that plaintiff cannot sit, stand or work less than 6 hours in an 8 hour day.  Further, the Court points out that while the

13

ALJ considered the report of Dr. Michalik and gave it the weight that he found appropriate, the ALJ did not make his decision solely on the report of Dr. Michalik.  As stated above, the ALJ's decision is very thorough and it is clear that the decision was based on the record as a whole including plaintiff's testimony.  The Fifth Circuit has held that when there are conflicting medical reports from examining physicians, the ALJ is to weigh the various physician reports and give some assessments reduced weight when they are not supported by medically acceptable clinical or laboratory diagnostic techniques or otherwise unsupported by the evidence.[17]  The Fifth Circuit has also stated that the ALJ has the sole responsibility for determining a claimant's disability status and that "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."[18]  Further, treating physician's opinions are not conclusive and can be assigned little or no weight when good cause is shown.[19]  The Court's function is to review whether the ALJ's decision is supported by substantial evidence, not to independently reweigh the evidence and consider whether it would rule as the ALJ did.

Further, the ALJ found that plaintiff's complaints of severe limitations were not credible.  The Fifth Circuit has held that the judgment as to the credibility of testimony is the

---

[17] Spellman v. Shalala, 1 F.3d 357, 364 (5th Cir. 1993); Scott v. Heckler, 770 F.2d 482, 485 (5th Cir. 1985); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

[18] Newton v. Apfel, 1209 F.3d 448, 455-456 (5th Cir. 2000) citing Paul v. Shalala, 29 F.3d 208, 211 (5th Cir. 1994).

[19] "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.", Id., citing Brown v. Apfel, 192 F.3d 492, 500 (5th Cir. 1999); Greenspan v. Shalala , 38 F.3d 232, 237 (5th Cir. 1994).

sole province of the ALJ.[20]  The ALJ's credibility determination is entitled to considerable deference.[21]  Furthermore, the regulations provide that a claimant's subjective complaints are considered credible only to the extent that the record evidence supports them.  After considering both the plaintiff's testimony and complaints, and the record as a whole, the ALJ found the plaintiff's credibility to be lacking and the Court will give considerable deference to that determination.

Considering the above, the Court finds that there is substantial evidence in the record as a whole to support the ALJ's findings that plaintiff is not disabled and that the ALJ followed the proper legal standards in making this determination.

Accordingly,

---

[20]  Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991).

[21]  Falco v. Shalala, 27 F.3d 160, 164 (5th Cir. 1994).

**IT IS ORDERED** that the ALJ's decision be affirmed, that plaintiff's appeal be dismissed, with prejudice, and judgment will be entered accordingly.

Signed in chambers in Baton Rouge, Louisiana, September 9, 2010.

**MAGISTRATE JUDGE CHRISTINE NOLAND**